23-1686 Western Missouri GEICO General Insurance Company et al. v. M.O. et al. All right. Mr. Mayor, we'll hear from you first.  Well, we're dealing with an entirely different subject matter than that first case. But like the first case and the great questions you all asked about the statute, the language used in the statute, and the importance of using language, that's what this case is all about in the GEICO insurance policy that was issued to Mr. Bronner. GEICO has chosen to exclude key language in the policy that they sold Mr. Bronner. And most importantly, as this court knows, they formatted it in a manner that is confusing and not usual with most other policies. There is a significant difference in the interpretation of the policies based on the placement of ownership, maintenance, or use, and the fact that this GEICO policy, auto policy, does not require an auto accident for coverage, unlike most policies out there. As noted in the briefs, there is only one case that has been, one court that has interpreted the language of this policy that we cite in the State of Louisiana Court of Appeals. And the Court of Appeals specifically informed GEICO in that decision that the way the policy was written extended coverage under the bodily injury. And they quote, a plain reading of the policy convinces us that the policy could be reasonably interpreted, and that's what we're looking for, what a policy holder would look at, to mean coverage is afforded for bodily injury claims, which an insured legally becomes obligated to pay because of bodily injury, and that coverage is not limited to claims arising from the use, ownership of a car. Let me ask this. Do you think a reasonable person looking at this policy in front of us would think that if someone, pretending I'm the insured in this situation, came on my property and tripped on my sidewalk and broke their leg, do you think a reasonable person would interpret this automobile policy to suggest that there's coverage because I'm now liable for bodily injury sustained by a person? No, and that's not our argument, Your Honor. And if we didn't set that forth in the brief, I apologize. They still use the language that it has to be an insured and it has to be related to the auto. It's got to be a covered auto. Well, I thought that's what you were trying to do is separate one and two and say that the arising out of the ownership, maintenance, use of the owned auto only applies to two. That was my understanding of your argument. Exactly. It is our argument, Your Honor, but if you look at the prefects. In my hypothetical, I think it makes sense. But under insured, for Section 1 to apply, if you read above that, if you look at the two separations, it says under Section 1, which is what we're suing under the bodily injury, it will pay damage which an insured becomes legally obligated to pay. So then you have to go to the definition of an insured. So under your example, he would not be an insured because it does not. I have a car that's insured under this policy. It's in my garage. The guy trips on my sidewalk and breaks his leg. I'm now legally obligated to him because I was negligent in maintaining my sidewalk. Under your reading, don't you have a claim under the auto policy? No, Your Honor. I believe that as it states in the policy, it applies to insured with regard to an owned auto. Where's the with regard language that you're relying on? It starts out under the insured, the definition of an insured. The definition of insured just says a person described under persons insured. And that's under, I'm sorry, it's under. So where's persons insured defined? It's not just the name of the person who took out the policy? Yes, Your Honor. All right. So where's this with regard to the auto language? I'll have to get it before my rebuttal because we have it cited in our brief. But it's under the Section 1 of what they will pay. And it's that initial provision. But I would agree, Your Honor, we're not looking at, unless it's with regard to an auto, we are not looking at anyone who has bodily injury coverage. What's the difference between with regard to an auto and use of an auto? Right. It's their language, right? They could have. But you're saying there's a difference. Correct. Because if you're saying it doesn't have to involve the use of the auto, but to get around the hypothetical Judge Grunder said it had to be, what, in relation to the auto? I don't know. How do you distinguish the two? That's a good question. What we do know is that there is CANDIS law on use in the cases that are cited on use. But with regard to that question has not come up as far as we know in the courts, whether it's CANDIS or Missouri. Again, this is a policy that GEICO has written and used that terminology. And the courts aren't here to fix that, I don't think. I think it's reasonable interpretation. And when there's a vagueness about it, you look at it from the interpretation that benefits the insurer. Well, I mean, the argument GEICO makes is if you follow your argument to its logical conclusion, GEICO would have no duty to defend because it defends under Section 2. That is correct, Robert. Look at where the sentence starts. That sentence ends after 2 when they talk about ownership, maintenance, or use. Then there's a period and then another sentence. It is confusing. I agree. What's your point about the fact that there's another sentence? You're saying that sentence now relates back to Sub 1? Yes. Why? Well, I think that's the way it could be read, Your Honor. There's a sentence after it, so it stops there when it talks about referring to the right and not the ownership, maintenance, or use. I understand there's a new sentence, but I thought your argument was premised on the enumerated subsections being distinct. Your Honor, that's why it's so confusing. And what GEICO has done is- It seems to me you're getting hung up on this. It seemed to me your stronger argument is just to hit it head on. Was it out of the use of the automobile? Okay. We're happy to argue that, Your Honor, and certainly we'll do that. I mean, I think you got at least one case that you couldn't hang your hat on, which is the one where the gun went off as they were out using the car to hunt. The garrison case? Yeah. I mean, to me, that's a much stronger argument than this textual argument you're trying to make here. But I don't want to tell you how to argue your case. I kind of like when you argue my case, Your Honor. But I just wanted to point out, at least that first part, there has been a Louisiana court case that says that makes it ambiguous. That's why there's coverage. Also, GEICO has changed the language under the policy. They have a whole new policy. And when they originally cited this language to Judge Guyton in the original summary judgment motion, they cited the revised language because it does matter. And that's why they have changed it. Now, let's go, Your Honor, to your issue of use. And it's given a broad and general comprehensive meaning affecting broad coverage. And we think that the use of this automobile would fall under that definition. Well, maybe this is kind of a, I don't want to say flippant, but I think sort of an obvious question. Use of an automobile to have sexual relations is pretty clearly foreseeable, I think. So does that mean that GEICO would be responsible for every unwanted pregnancy that might have occurred in an automobile? I don't know that we have a cause of action for unwanted pregnancy in Kansas. Is that your question? If they get pregnant, could someone sue for unwanted pregnancy? I don't believe that's a cause of action, but that's a good question. And we've got to realize GEICO had – Wouldn't it be limited to bodily injury? Good point. Unless that's a bodily injury. Maybe that's the limitation. It's not a bodily injury. Yeah, and this was a bodily injury. This poor lady received cancer and had – it's terrible. It's a bad situation. And it was bodily injury in this case. Was she actually diagnosed with cancer? Oh, yeah, and had surgery. And we went through, and I don't know if that's part of this case, but we went through an arbitration, have a judgment. We have an arbitration award currently, and the case has been – I was just kind of curious how it got into arbitration. It wasn't a lawsuit. Was there an agreement to go to arbitration? Yes, this is – I don't even know if the courts were, but this has been in the public a lot, and it's been very embarrassing for both parties. They're insured, who they sent a letter saying, leave us alone. We're not defending you. We're not going to be involved in this case anymore. And to our client, who suffered what she has suffered and gone through. So, yeah, we did an arbitration and received an arbitration award. It was fully defended by a very good defense counsel in Kansas City, Missouri. Are there any – oh, I would like to point out, too, and I guess you've looked at this, Judge, if you said sex in an auto is kind of real. And they do have – the umbrella policy specifically excludes the transmission of STDs. And that's a GEICO policy. We did not sue under that GEICO policy. This one, had they chosen, they could have put an STD transmission in there. Exclusion. How do you distinguish – I think there's a Kansas case, I don't have the name of it, that essentially says using a vehicle as a shelter does not constitute use of the vehicle under a policy. Your Honor, I believe that's the Evans case you're referring to, which is the – is it the M80 case where they're throwing – Yeah. Is that right, Your Honor? Yes. In the car. To us, we look at that differently. They're using that as shelter to light the M80s and then throwing them out, and that's where the injury occurs. The injury occurs outside of the vehicle. Here, they are using this vehicle to have sex. This lady has children in the house. They can't go in there. As Judge Maloney said, you know, 80 – there's a stat out there, 80% of people have had – I won't take a show of hands, but have had sex in a car. So it's a known thing. So they were doing that. That was the use of the vehicle when they did that, and that the injury occurred in the vehicle. Okay. So that's the distinguishing factor. One's in, one's out. Yes, Your Honor. Any further questions? I thought the woman in the M80 case was in the car when she was injured. I will apologize if I'm wrong, but I'm pretty darn sure that they threw an M80 out. I know Mr. Beck will know this. The thrower was in the car, but I think the victim was in it. Right. The victim was outside. Because they threw it into a burn barrel.  Was it her beer glass, Your Honor? I hate to contradict you. Something exploded. Yeah, I think they threw it in her beer glass, and the beer glass exploded as she's outside the vehicle. Okay, all right. So the M80 was lit inside the vehicle and thrown out, and the argument was that the vehicle was used. How about the yacht case, the case involving the yacht? I know it's unpublished, but still. Sure. And I agree. You've got to look at that case too, Your Honor. But again, the key issue there and what the court decided on is that required a yacht accident. The GEICO policy does not require an auto accident, and that's the distinction in the yacht case. That's why they decided there was no coverage. All right, thank you for your time. All right, thank you. Thank you. Mr. Beck, we'll hear from you. Good morning. May it please the court. I want to start with some of the court's questions, specifically first on the use question and whether or not sexual relations in an automobile constitutes use of that auto. That argument is foreclosed. I mean, that's the whole case, isn't it? Excuse me? That's the whole case, isn't it? I disagree, Your Honor, because I don't think that the case law – you would have to buy some of their arguments first, right? If the court concludes that the plain language of the policy requires the injury for bodily injury to arise out of the ownership, maintenance, or use of the auto, which we believe is correct, then yes, there would be the issue of, is this use of an auto? The Kansas cases at issue directly address that question. I'll quote from the Evans case. Quote, mere use is not enough. Quote, an injury does not arise out of the use of a vehicle within the meaning of the coverage clause of an automobile liability policy if it is caused by some intervening cause not identifiable with the normal use of an auto. That's exactly what we have here with respect to use. What's the normal use of an auto mean? Using an auto as an auto. That's what's set forth in the coverage clause of this policy and as – Well, that doesn't help me. Using an auto as an auto doesn't help me because it depends how you use an auto. For vehicular purposes. Where does it say that? I think it runs throughout all of the Kansas cases. Specifically, it's the basis for why sheltering in an auto or the fact that the injury merely occurred in an auto, the act that caused injury was in an auto, is insufficient under all of the Kansas cases. The Garrison case gives an excellent example of what it takes to be use of an auto as an auto. That's the accidental discharge of a shotgun being removed from an automobile that was actively being used on a hunting trip. They were driving, pausing, would get out, would hunt, would get back in the car, would drive to another location. They were using the car as an automobile is intended to be used. Indeed, in Garrison, the court specifically said with respect at the time of the injury, and I quote, Garrison was driving. The engine was running. That's what it takes to be use of an auto as an auto. So if the engine is running, then this case would be different? If they have the car running to provide heat and they're in the backseat, then it would be use of an auto? No, Your Honor. No. I thought you just said the fact that the engine was running was key. It's relevant, and it's indication that Mr. Garrison was driving the auto for the purpose of hunting at the time of the injury. And taking an automobile on a hunting trip is normal use of an auto as an auto. It's important to note that if any use of an auto was sufficient, not only would it contradict all of the cases that we have that specifically say merely the fact that the injury occurred in an auto or shelter was being taken in an auto is insufficient. There isn't a single Kansas case that says otherwise. But if we contradicted that, then literally anything that happened in, on, or around an automobile would constitute use and thus would potentially give rise to coverage. That broad reading turns the policy into a general liability policy with the only requirement that the auto be somewhere near the injury. Well, how do we deal with the language that Garrison says? Coverage exists where the minimal casual connection between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle for hunting. Take out the word hunting and for sexual relations. Is there any doubt that, I'm not sure I agree with the 80%, but that it's foreseeable that people are going to have sex in the car? I mean, that's clearly foreseeable, right? There's two things I would say to that, Your Honor. One, Garrison nor any of the other courts engaged in a true foreseeability analysis. And foreseeability under the law is not the same thing as conceivability. The language that you quoted is accurate, foreseeable, and reasonable. It is not just whether or not it can be hypothetically foreseen. It must be a reasonable use of the auto. With respect to how frequently that may occur, that is first extrinsic evidence that cannot be considered by the court in determining under Kansas law whether there's an ambiguity in this policy. And regardless, as the district court, Judge Gaitan noted, that single study he found not to be persuasive. We have a threshold coverage issue here that assumes, it asks the question, is there coverage under the policy assuming there was sexual activity in the listed vehicle during the policy period? And that is the only question currently before the court. So if you look at all of the Kansas cases, the key there is that minimal causal relationship across all policy language that has been addressed. Causality requires something more than simple foreseeability or any use of the auto. The use must be related to the coverage that is provided and the typical use of an auto. In addition to the Garrison case, I believe it was the Hamidian case, specifically noted that the use had to be related to the purposes set forth in the declarations in the policy. That is, auto. Not just any use one could conceive of. And I wanted to pick up on and clarify this issue of the with regard to an auto language because I do think it is accurate. Would it be a different case if there was a driver and they were actually moving? The car was running and they were driving down the road and these two were in the back seat. It would certainly be a different case because those are not the facts before the court. Whether it would make a difference. In your opinion, would there be coverage? Would that be the use of an automobile? I think the key there is minimal causal connection between the use of the auto and the injury. Not just an injury in an auto. I think the point of Garrison was the car was being used for a hunting trip. That's a normal use of an auto as an auto. So the question would still remain, if someone was driving the car, is allegedly negligently transmitting an STD in the automobile normal use of the auto? But we have no question here. How do we decide if it's normal? You keep saying normal or typical. I think you look to what the Kansas Supreme Court has instructed. You look to the coverage provision in the policy. You look to the declarations in the policy. Coverage doesn't say anything about hunting. It does not. But I think a reasonable interpretation, we all know what is using an automobile as an automobile and what is not. I don't know you say we all know it. That's what this case is about. You're saying we all know that people don't have sex in cars? No, Your Honor. No, okay. Well, what do you mean then? You say we all know that people go hunting in cars? I think that that's fair, yes. But we don't all know that people have sex in cars. I don't know that we know that, but I don't think that's the point. Well, then I don't understand your point. Go ahead. The point is whether or not sexual relations in a car constitutes appropriate use of the auto as an automobile to establish that minimal causal connection. Now you're adding a concept of appropriateness. I think we can strip that word right out. It's the minimal causal connection. Is there a causal connection between the use of the auto in order to trigger automobile liability coverage? Otherwise, the hypotheticals, and several are set forth in the brief, are innumerable. You're turning what is an automobile policy into a general liability policy without restriction.  Well, you still have the Evans case, which says the fact that they used the car to block the wind is not enough. They could have done the same thing leeward of the car, using the car to block the wind that way. And so the fortuity of being in the back of the car versus on the side of the car is not enough. But you could distinguish that, couldn't you, from this case? I don't think that you can. On the grounds that it really isn't an option to have the sex on the ground of the parking lot. The Evans court found, and specifically stated, it did not matter whether the firecracker was lit behind the car, or inside of the car, or thrown outside of the car. The key there was the car was merely being used as shelter. Whether or not the injury alleged here could have occurred in a different way is irrelevant. The car here was being used as shelter, and nothing more. And Evans instructs, along with every other Kansas case, that under Kansas law, merely using the automobile as shelter is insufficient to establish the required minimal causal connection between the use of the auto and the injury. I don't know. Well, you use as one of your extreme hypotheticals somebody getting in the car and taking a nap, and then having a heat stroke. But let's put a little different scenario on that. Unfortunately, every summer we hear of tragic accidents where young children are left in a car after they were driven to daycare or whatever, and forgotten, and suffer injuries. That would be use of the car, wouldn't it? The only real difference there, Your Honor, is part of that hypothetical going to and from a location. Using the car to drive to a place where then an act is committed that causes injury. So let's say they drive the car to a favorite romantic spot in order to have sex in the car. That distinction has been addressed and foreclosed in both the Evans case and the Patrick case. In Patrick, the allegation was negligent sexual molestation in an auto. During the time, the actor would take the claimant on shopping trips and then would allegedly commit that act. Patrick still said that is not enough. Using the car to go to or from a place and then any act that occurs in the car that is not related to the use of an auto as an auto is not covered. Evans is the same way. Presumably they used that auto to drive to the bonfire, to and from. That's the only distinction between those hypotheticals. The purpose of the auto policy is to provide, as it says throughout, auto liability coverage. Turning it into a general liability policy with the only requirement being that an act occurred in an automobile runs counter to the plain language of the policy, is directly addressed by Evans, Patrick, Hamidian, and Garrison, two of which are Kansas Supreme Court cases, and expands the policy into some sort of a general liability policy. I wanted to clarify this issue the court raised on the person's insured language and the with regard to an auto requirement. Appellants now concede that the bodily injury must be at least with regard to an auto. That is from the person's insured coverage provision, which provides that coverage applies to an insured with regard to an auto. It's actually in the appendix at page 419. Interestingly, under appellant's argument, we now have property damage subject to two different standards. Because with regard to an auto occurs textually in the coverage provision before bodily injury and property damage. And then comma arising out of the maintenance, ownership, or use of an auto. Therefore, with regard to an auto must apply to all three. It must apply to bodily injury and property damage. And yet, appellants argue arising out of ownership, maintenance, or use only applies to property damage. We can't have two different standards applying to property damage and one standard applying to bodily injury. That is an unreasonable interpretation of this policy. I also wanted to comment that with respect to the other extrinsic evidence that has been relied on, as Judge Agtan noted, that is not something that can be considered by the court at this time. Whether it be a Louisiana appellate court case, ISO forms, none of that is relevant. The only question here is looking at the policy language, giving it the interpretation, a fair reading, would a reasonably prudent insured understand that bodily injury must arise out of the ownership, maintenance, or use of an auto? And as set forth in our brief for the various textual reasons, that is clearly the only possible interpretation of the policy language. But with respect to, if we assume that that requirement exists, the requirement of use, the only thing we have to understand the mets and bounds of that use are these Kansas cases. And they say, universally, sheltering in an auto is insufficient. The fact that the auto is the mere location of an injury is insufficient. The fact there is an intervening cause unrelated to the auto severs any causal connection. Under all of those cases, they directly address the question of, is this use of an auto under Kansas law? And the answer is no. Thank you. All right. Thank you for your argument. We'll hear a vote. May it please the court. Mr. Beck already pointed out, I apologize for not getting the site where it talked about the insured in relation to the auto. So I appreciate Mr. Beck pointing that out. It is in there. My apologies. I think he gave you the site, but it's appendix 419, R document 117 through 110 at 8. Right. And I think we kind of moved on from there, going where I was arguing what I thought was a good argument. Your point there is that because it says the coverage applies to insureds with regard to an owned auto, it would exclude the sidewalk hypothetical? Absolutely. Absolutely. And then I know, Judge, you're going to say, well, what is regard, and as I've been asked today, what is regard me to? Not our issue. Not your issue. That is what GEICO has done. I would tell you it's a lot broader than owner maintenance or use. And I think that's the way we need to look at this case. Just with regard to Patrick, that was brought up. That was an intentional sexual abuse case that occurred in the car, and it required an auto accident. It has nothing to do with the language used in GEICO's. If you go to the questions regarding use, now this is not an auto case within the provisions we're looking at, but U.S. Fidelity and Guarantee v. Hopkinson, I believe, they say the used words is given a broad and general and comprehensive meaning affecting broad coverage in view of the fact that is found in coverage clauses. The word used should always be interpreted that way. And finally, in garrison, as we keep relying on and talking about, the vehicle is not required to be an active accessory to the accident. The use is a broad catch-all designed and construed to include all proper uses of the vehicle, citing Hopkinson. And again, that's what we're looking at. The reference that going on a date, I would say that the references of garrison saying going hunting is a normal use, well, when you go on a date, it's normal to use a car too. Thank you all, unless someone has a question for me. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Counsel are excused.